## John Angelo

### *v.*

## Sarah Angelo.

1. Divorce—*case on facts showing adultery.* In this case facts are stated strongly tending to show adultery on the part of the wife, and which, in the opinion of this court, entitled the husband to a new trial, the jury having found against the charge.

2. Husband and wife—*separate maintenance.* Where the wife leaves her husband without sufficient cause, she will not be entitled to a decree for a separate maintenance.

3. Where the only cause for the wife's desertion was, the husband saying he had been deceived by her, and that she was not a virtuous woman, the proof going to show he was right in his conjecture, but otherwise he had always treated her kindly, and he had tried to induce her to come back, it was *held*, the wife was not entitled to a separate maintenance.

Appeal from the Circuit Court of Morgan county; the Hon. Cyrus Epler, Judge, presiding.

Messrs. Ketcham & Taylor, for the appellant.

Messrs. Dummer & Brown, for the appellee.

Mr. Justice Sheldon delivered the opinion of the Court:

This was a suit commenced February 4, 1874, by original bill, by the appellant, John Angelo, against Sarah Angelo, the appellee, for a divorce, on the ground of adultery and an attempt to cause his death by poison.

Afterward, the defendant filed her cross-bill on the ground that complainant had caused her, by his wrongful conduct, to de-

sert him, praying that she might be permitted to live separate and apart from him, and he be required to make provision for her support and maintenance.

The issue of adultery on the original bill was tried by a jury and found in favor of the defendant, that of poisoning having been excluded by the court; and a motion for a new trial having been overruled, the original bill was dismissed by decree of court. At a subsequent term, the issue on the cross-bill was tried by the court, and a decree rendered allowing appellee to live separate and apart from her husband, with a separate maintenance of $150 per annum, payable quarter-yearly.

The complainant, John Angelo, took this appeal.

The marriage took place on Wednesday, January 14th, 1874, appellant being then seventy-four years of age and blind. He was a farmer, residing six miles from Jacksonville, upon a farm, with three children, a boy about seven years of age, and two daughters, one about seventeen, the younger about fifteen, who composed his family. After the marriage, upon the same day, the parties went to appellant's home. On Thursday of the following week, appellee left appellant's house, and never afterward returned, refusing to do so.

The evidence shows that, some two weeks previous to the marriage, appellant, when, one day, being present with a load of wood which he had caused to be hauled to town, at the house of one Sinnett, made some remark to the woman to whom the sale of the wood was made, indicating that he wanted a housekeeper. On the 12th day of January, 1874, he received, through the postoffice, a letter from the sister of the woman to whom he made the remark about a housekeeper. The letter appears to have been destroyed. John McManus, whom appellant got to read the letter to him, testifies that the letter, as near as he could repeat and reproduce it, was as follows:

"Through the information of Mrs. Sinnett, I understand you want a housekeeper, and I recommend myself as a good wife for a farmer. By calling at Mrs. Sinnett's and having a

little talk, we can make all right.   I am twenty-four years old. You can call where you left the hickory wood.

(Signed)                                   SARAH HAUGER."

On the next day, appellant, accompanied by John McManus, his grandson, twenty-four years of age, repaired to the house of Sinnett, inquired for and met there the writer of the letter. An interview was had, McManus being present, and after some preliminaries—among them she inquiring and he informing her in regard to his property; that he had 235 acres of land, a brick house that cost $5000, and that his widow would get about $7000—a matrimonial engagement was contracted between them, and 10 o'clock the next morning was fixed for the solemnization of the nuptials.   They were accordingly, on the morning of the following day, joined in marriage.   They went out to appellant's home in a carriage, McManus driving.   On the way, McManus and the bride engage in sportive chat.   He rallies her upon the subject of her not wedding a younger companion, which provokes from her the inquiry, whom she could have got, whereto he responds, his own self, had he only have known her before.   After the arrival at appellant's house, McManus and appellee were out together, alone, in the yard, that afternoon. He stayed in the house that night.   The next morning appellant rose early, and, some time afterward, McManus testifies that he went up stairs into the sleeping room of appellee, and there had sexual intercourse with her.   There is the corroborative evidence of one of the daughters, that McManus and appellee were in the room together.   They were seen talking together in the yard that morning, before McManus left.   He went away about 10 o'clock that morning.

Two subsequent letters from appellee to McManus were in evidence.   One, dated February 22, 1874, reads: "Your much welcome letter, dated the 15th, was received last Friday, and read with much pleasure.        *      *      *      Well, Johnny, you say you will be my friend.   I hope you will be a friend to me, and if I should need your assistance in any respect, I shall call on you.   You say that you had heard that I had left the old man, but had not heard the cause; no doubt you have

heard more by this time, so I shall not relate to you the case, as you will know it all very soon at any rate, so I will close for this time, hoping to hear from you at your convenience.

From friend

SARAH ANGELO."

The other was dated April 13th, 1874, saying his much welcome letter dated March 10 was read with much pleasure, and hopes this may find him enjoying himself "splendid." * * * " Well, Johnny, I will tell you that I have not seen the old man lately, and, more than that, do not desire to see him," etc.

David Prince testified that he was appellant's family physician many years ago, and of late had been, off and on; that appellant, about a year ago, (witness testifying at May term, 1875,) called on him to treat appellant for syphilis, with which he was then affected; had never treated him before or since for the same disease; that the disease could not have been of longer standing than twelve weeks. Appellant testifies the disease was contracted from appellee, and no one else; and there is some corroborative evidence in admissions testified to, of appellee. There is some evidence in the case which, it is insisted, tends to the contrary, but we do not deem it necessary, for the present purpose, to review it.

There were facts and circumstances introduced in evidence which tended to show an attempt on the part of appellee to cause the death of appellant by poison—by the introduction of it into coffee which appellee prepared for the separate use of appellant, while providing different coffee for the rest of the family. This would be a fact, if proved, lending confirmation in support of the charge of adultery, and of the evidence as to its commission.

The charge of adultery is met by the denial of appellee, but, upon a careful consideration of all the testimony, we are led to the conclusion that the clear preponderance of the evidence is on the side of the complainant in the original bill, and are of opinion that a new trial should have been granted.

We see no sufficient reason to justify appellee in leaving her husband as she did. No more cause for it appears from the

proof than appellee's statement that appellant said he had been deceived by her, and that she was not a virtuous woman. The evidence was, that she had been kindly treated, and she herself acknowledged the same after she had left.

Shortly after her leaving, appellant made two successive applications to her, to try to induce her to return, but she peremptorily refused to do so.

The decree will be reversed, and the cause remanded for further proceedings.

*Decree reversed.*